# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| SHAWN NORMAN RIDDLE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. CV 17-01950-AS<br><br>**MEMORANDUM OPINION AND**<br><br>**ORDER OF REMAND** |

## PROCEEDINGS

On March 10, 2017, Plaintiff filed a Complaint seeking review of the denial of his application for Disability Insurance Benefits. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 9-10). On August 3, 2017, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 13-14). The parties filed a Joint Submission ("Joint Stip.") on December 6, 2017, setting

forth their respective positions regarding Plaintiff's claim. (Docket Entry No. 17).

The Court has taken this matter under submission without oral argument. <u>See</u> C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On November 15, 2013, Plaintiff, formerly employed as a service technician for an air conditioning company and a maintenance person for a carpet manufacturer (<u>see</u> AR 60-61, 212-14), filed an application for Disability Insurance Benefits, alleging an inability to work because of a disabling condition since February 29, 2012. (AR 173-74).

On May 12, 2015, the Administrative Law Judge ("ALJ"), Joan Ho, heard testimony from Plaintiff (who was accompanied by a non attorney representative) and vocational expert ("VE") Joseph Torres. (<u>See</u> AR 44-80). On July 29, 2015, the ALJ issued a decision denying Plaintiff's application. (<u>See</u> AR 23-36). After determining that Plaintiff had severe impairments -- "obesity; left tibia/fibular fracture, status-post open reduction internal fixation with hardware removal; history of T12 compression fracture; partial thickness tear of the right rotator cuff, status-post arthroscopic repair; and, as of March 2015, status-post acute myocardial infarction with multi-vessel coronary artery disease

status post quadruple coronary artery bypass graft (AR 25-27)[1] -- but did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments (AR 27-28), the ALJ found that Plaintiff had the the residual functional capacity ("RFC")[2] to perform light work[3] with the following limitations: can lift and carry up to 20 pounds occasionally and 10 pounds frequently; can stand and walk approximately 6 hours during an 8-hour workday; can sit for approximately 6 hours during an 8-hour workday; can occasionally climb ramps and stairs, but can never climb ladders, ropes and scaffolds; can occasionally balance, stoop, kneel, crouch and crawl; can occasionally reach with the right upper extremity, but can never reach overhead with the right upper extremity; must avoid concentrated exposure to extreme cold; and must avoid frequent running and walking on uneven terrain. (AR 28-33).

Relying on the testimony of the VE, the ALJ then determined that Plaintiff was not able to perform any past relevant work (AR 33-34), but could perform jobs that existed in significant numbers in the national economy. (AR 35-36). Accordingly, the ALJ found that Plaintiff was not

---

[1] The ALJ found that Plaintiff's other impairments -- pain in both knees, and adjustment disorder with mixed anxiety and depressed mood -- were nonsevere. (AR 25-27).

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

3

disabled within the meaning of the Social Security Act. (AR 34-36).

Plaintiff requested that the Appeals Council review the ALJ's decision. (See AR 19). When the request was denied on December 9, 2015, (see AR 1-5), the ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

//
//
//

4

**PLAINTIFF'S CONTENTION**

Plaintiff alleges that the ALJ failed to properly assess Plaintiff's credibility. (See Joint Stip. at 4-13, 17).

**DISCUSSION**

Plaintiff asserts that the ALJ did not provide clear and convincing reasons for finding that Plaintiff's testimony about his symptoms was not credible. (See Joint Stip. at 4-13, 17). Defendant asserts that the ALJ provided good reasons for finding Plaintiff not fully credible. (See Joint Stip. at 13-16). After consideration of the record as a whole, the Court finds that Plaintiff's claim of error warrants a remand for further consideration.

1. Legal Standard

Where, as here, the ALJ finds that a claimant suffers from a medically determinable impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate "the intensity, persistence, and functionally limiting effects of the individual's symptoms . . . to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the [ALJ] to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effect." Soc. Sec. Ruling 96-7p.

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of

the subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her pain and symptoms only by articulating specific, clear and convincing reasons for doing so. Brown-Hunter v. Colvin, 798 F.3d 749, 755 (9th Cir. 2015)(citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)); see also Smolen, supra; Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Because the ALJ does not cite to any evidence in the record of malingering, the "clear and convincing" standard stated above applies.

Generalized, conclusory findings do not suffice. See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (citation and internal quotation marks omitted); Holohan, 246 F.3d at 1208 (the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); Smolen, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); see also SSR 96-7p.

2. The ALJ's Credibility Finding

Plaintiff made the following statements in a "Function Report - Adult" dated December 15, 2013 (see AR 228-36):

> He lives with family in a prefabricated place. He provides financial support for his family. He takes care of pets by loving them (his wife feeds the pets). With respect to his daily activities, he does physical therapy and stretching, uses a H-wave machine, visits doctors, and takes medications. (See AR 228-29, 235).
>
> For his impairments he takes Hydrocod/Norco (which causes him to be tired and angry), Ambien (which causes him to be tired and to have memory loss), Ativan (which causes him to be tired and to have memory loss), and Ibuprofen (which causes him to have an upset stomach and constipation). (See AR 235).
>
> His impairments affect his walking, standing, bending over, lifting, climbing, stair climbing, squatting and carrying step ladders, and therefore limit his ability to work. His impairments affect his sleep (his pain keeps him awake). His impairments affect his abilities to dress (he has pain), bathe (he has pain), use the toilet (he has pain and cannot twist), and have sex. He does not need special reminders to take care of personal needs and grooming, and he does not need reminders to take medicine. (See AR 228-30, 235).
>
> He prepares his own meals (once or twice a week), but his wife does most of the cooking. His impairments have not changed his cooking habits. His househould chores are household repairs. He needs his son to help him with lifting and doing physically demanding chores. He cannot do housework or yardwork because he cannot lift or push or pull heavy items. His wife feeds their son, does the laundry, and cleans the house. He goes outside alone, driving the car, daily. He shops in stores for food and personal hygiene items, two times a month (1 hour or more). He is able to pay bills, count change, handle a savings account, and use a checkbook/money orders. His impairments have not changed his ability to handle money. (See AR 229-32).
>
> His hobbies and interests are exercising, hiking, riding quads, taking long walks, and holding and playing with his grandson. He does limited exercise and cannot do these activities because of pain in his back, leg, arm and knee.

He socializes with others as often as he can. He regularly goes to doctors' appointments and physical therapy, but he needs to be reminded to go places. He sometimes needs someone to accompany him out, depending on the activity (i.e., loading of heavy items). He has problems getting along with others because his medication and pain make him irritable. Since his accident he no longer goes camping or rides ATVs. (See AR 232-33).

His impairments affect his lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair-climbing, memory (the medication), concentration, and getting along with others. He does not know how far he can walk before needing to rest; he uses a cane if he needs to walk far. He does not know for how long he can pay attention (he is always in pain). He finishes what he starts and can follow written and spoken instructions pretty well. He does not know how well he gets along with authority figures. He has never been fired or laid off from a job because of problems getting along with other people. With respect to handling stress, he takes anti-anxiety medication since the accident (he does not have work, his family does not have medical insurance, and he has limited funds). He has fears of not working and of being poor. In March 2012, he was prescribed a wheelchair, walker, crutches, back brace, and a cane, and he uses a cane for long walks. (See AR 233-35).

Plaintiff gave the following testimony at the May 12, 2015 administrative hearing (see AR 47-66):

He is married, and lives with his wife in a mobile home. He is 44 years old, 5'9" tall, and weighs 180 pounds. He is right-handed. He has a driver's license. Prior to March 8, 2015 (when he had a heart attack), he drove on a limited basis, to doctors' appointments and for prescriptions. His back hurt when he drove long distances (for about 30 minutes). He has not driven since his heart attack -- the doctors retricted his driving after his surgery, the medication makes him dizzy, and he is concerned about injury if an air bag deploys. He was no longer able to work as of February 29, 2012 (when he had a work accident, falling from the roof 15 feet, and sustaining numerous injuries -- a left ankle open tibia fracture, three compression fractures in the back, three bulging discs, a right rotator cuff tear, both knees [the right knee gives out when he bends down, a MRI

8

shows a baker's cyst behind his right kneecap]), and he has not worked since then. He had shoulder surgery (torn rotator) in April 2014. He walked into the hearing using a cane, and he has used a cane mostly outside the house every day since February 29, 2012. As a result of the accident, he suffers from depression and anxiety, which causes him to have daily panic attacks that would present a problem for him returning to the work setting. (See AR 45, 48-51, 53, 55, 57-59, 61-62).

He has limitations in sitting, standing, walking and lifting because of his back and his knees and ankle. (He did not know if Dr. Allison, the doctor who had reconstructed his ankle, had put any physical restrictions on him. His ankle has lost range of motion in his ankle.) He has limitations in reaching because of his back, left arm, and left shoulder. He can sit for 30 minutes before feeling discomfort. After sitting for 30 minutes, he has to get up (it takes about 15 minutes to relieve the back pain). He can stand in one spot for about 15 to 20 minutes before feeling discomfort. Although he is not supposed to lift any weight, he estimates he is able to lift 10 pounds. (See AR 51-53, 55-56, 62).

He is not able to do daily chores (cooking, cleaning) because of his impairments. On a typical day, he wakes up, takes a pain pill, eats breakfast, mostly stays at home until he takes a walk around the neighborhood for about 20 minutes (which causes pain in his left ankle, back and shoulder, but he does it based on the doctor's instruction that it is good for his heart). (See AR 59-60).

Most of the day, when he is not walking, he sits on the couch and puts his legs up to relieve the pain. Pain medications are helpful, but there are side effects, such as memory loss, tiredness, and dizzines. To counter the side effects he usually takes one nap a day for about an hour and a half. (See AR 53-55).

He tries to avoid his panic attacks. He has seen a psychiatrist (Dr. Guntupalli) for his depression and anxiety every 90 days. Since 2012 he saw a therapist (Mike O'Cleary) for his depression and anxiety once a week for a year, but his insurance changed. The therapy and medications helped him cope with the symptoms. Although his ankle and back have healed, he is still having problems with them. He recently received an injection for his ankle. (Dr. Allison has not

9

recommended an ankle replacement). For his back, a nerve block in May has been scheduled, and acupuncture has been recommended. He is not getting any treatment for his right knee. (See AR 57-58, 62-65).

He is not able to work in a desk job or a bench job, with no real skills required, because he cannot sit for longer than 20 to 30 minutes, he has a bad memory, he has trouble concentrating, he has restrictions on lifting, reaching, sitting and concentrating, and his medication makes him tired.
(See AR 61).

After summarizing Plaintiff's testimony (see AR 29), the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Id.

The ALJ found that Plaintiff's functional limitations were sufficiently accommodated by the RFC determination. (AR 29-30). In making this finding, the ALJ considered the opinions provided by two state agency medical consultants, a consultative medical examiner, Plaintiff's treatment physician, two state agency psychological consultants, a consultative psychiatric examiner, and workers' compensation doctors. See AR 30-32. The ALJ also based this finding on his assessment of Plaintiff's credibility, stating, "[i]n making this finding [about Plaintiff's RFC], the undersigned must also address the credibility of the claimant as it relates to statements made regarding the extent and severity of the claimant's impairments and the limitations they cause." AR 32.

After reviewing Plaintiff's treatment history, work history and activities of daily living, and considering the statements in the third party function report prepared by Plaintiff's wife, the ALJ concluded that plaintiff's "statements about the severity and limiting effects of his impairments cannot be given full weight as the factors that affect his credibility outweigh the factors that bolster his credibility." AR 33.

      a.    Treatment History

The ALJ discounted Plaintiff's credibility based on Plaintiff's treatment history, finding that Plaintiff's ankle surgery was successful and that even after a second surgery to remove the hardware, the ankle was reported to be stable, there was "no evidence joint degeneration in spite of the greater likelihood of degeneration following this type of injury," (AR 32), and that Plaintiff's limited range of motion in his ankle was taken into account by the RFC limitations. Id.

With respect to Plaintiff's injury to his thoracolumbar spine, the ALJ noted that the spine was "structurally stable and as such, the objective medical evidence of record does not support [Plaintiff's] allegations of debilitating pain symptoms from his low back." (AR 32).

The ALJ noted that Plaintiff's complaints of shoulder pain predated his fall in February 2012, Plaintiff had received conservative treatment for the partial tear of the rotator cuff prior to having arthroscopic surgery to repair the tear in 2014, and that Plaintiff's continued symptoms of pain and loss of range of motion were taken into account in the RFC limitations.

The ALJ found that the records of treatment for Plaintiff's other impairments and his recent heart attack did not affect his ability to work within the RFC limitations and discounted Plaintiff's allegations regarding the functional limitations imposed by his depression and knee impairments. (AR 32).

### b. Work History

The ALJ found that Plaintiff's credibility was bolstered by his work history, noting that Plaintiff's long and continuous history of work at substantial gainful activity levels going back more than fifteen years, his lack of earnings since the alleged onset date, "generally supports his allegations that he is not able to work following his traumatic fall on February 29, 2012." (AR 33).

### c. Activities of Daily Living

The ALJ found that Plaintiff's ability to drive and go out alone and continue to socialize was inconsistent with the statement made in his function report, that he has difficulty walking, standing, bending over, lifting, climbing stairs, squatting, and carrying object and was therefore not able to perform most household chores. (AR 33). The ALJ also discounted Plaintiff's allegations of problems with concentration and attention, noting that Plaintiff admitted that he was able to finish activities without difficulty, follow both written and spoken instructions well, handle his family's finances, and drive, "which are all activities that require good attention and concentration." Id. The ALJ also found that Plaintiff's testimony about limited activities was

contrary to the statements in his function report and the medical records which note stability and minimal worsening of Plaintiff's impairments. Id.

   3.   The ALJ Did Not Properly Assess Plaintiff's Credibility

As set forth below, the ALJ failed to provide clear and convincing reasons for finding that Plaintiff's testimony about the intensity, persistence and limiting effects of his pain and symptoms was not entirely credible.[4]

First, the ALJ failed to "specifically identify 'what testimony is not credible and what evidence undermines [Plaintiff's] complaints.'" Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)); see also Smolen, 80 F.3d at 1284 ("The ALJ must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion").

Second, the ALJ's partial discrediting of Plaintiff's testimony about his symptoms and functional limitations based on his ability to perform certain daily activities, such as driving, going out alone, and socializing, was not a clear and convincing reason. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a

---

[4] The Court will not consider reasons for finding Plaintiff not entirely credible (see Joint Stip. at 15-16) that were not given by the ALJ in the decision. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)("We are constrained to review the reasons the ALJ asserts."; citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947), Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001)); and Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014)("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."); Reddick, supra ("Only if the level of activity were inconsistent with the Claimant's claimed limitations would these activities have any bearing on Claimant's credibility."). While a plaintiff's ability to spend a "*substantial part*" of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting may be sufficient to discredit him, here, there is no evidence that Plaintiff was spending a substantial part of his day engaged in these activities or that the physical demands of such tasks as driving, going out alone and socializing when able to do so, were transferable to a work setting. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). Indeed, at the time of the hearing, Plaintiff testified he was not able to do daily chores (cooking, cleaning) because of his impairments and mostly stays at home and puts his legs up to relieve the pain. (AR 59-60). Thus, Plaintiff's admitted daily activity does not constitute a legally sufficient reason to reject Plaintiff's credibility.

It is not clear whether the ALJ considered Plaintiff's testimony about his limited abilities to perform such daily activities (see AR 45, 48-49 [Plaintiff testified that before his heart attack on March 8, 2015 he drove on a limited basis to doctors' appointments and to obtain prescriptions], 51 [Plaintiff testified that his back would hurt if he drove long distances, which was for about 30 minutes], 231 [Plaintiff testified that he shopped in stores for food and personal hygiene items on a biweekly basis for only an "hour or more"], 232 [Plaintiff

testified that he sometimes needed someone to accompany him when he went out, particularly if it required the loading of items], and 232 [Plaintiff testified that he socializes with others "[a]s often as [he] can"]. Therefore, the degree to which Plaintiff could perform such daily activities may not have been inconsistent with his testimony regarding his symptoms and limitations. See Reddick, supra; see also Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)("If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.").

Third, to the extent that the ALJ partially discredited Plaintiff's testimony based on inconsistencies in Plaintiff's testimony and on inconsistencies between Plaintiff's testimony and notations in the medical record, see Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) ("In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony."); Light v. Social Security Admin., supra ("In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work history, and testimony from physicians and third parties concerning the nature, severity, and effect on the symptoms of which he complains."), such reason was not clear and convincing. For example, the ALJ failed to state how Plaintiff's testimony about his difficulties with concentration and attention -- (see AR 233 [in the Function Report, Plaintiff testified that his

15

impairments affected his ability to concentrate and that he did not know for how he could pay attention because he was always in pain], AR 61 [at the hearing, Plaintiff testified he is unable to do basic work full-time because of trouble concentrating]) -- was inconsistent with Plaintiff's testimony about his abilities to finish activities without difficulty, follow written and spoken instructions well, handle his family's activities, and drive (see AR 231, 233 [in the Function Report, Plaintiff testified that he drove a car, that he was able to pay bills, count change, handle a savings account, and use a checkbook/money orders, and that he finished what he started (using a conversation, chores, reading, and watching a movie as examples), AR 48-49, 51 [at the hearing, Plaintiff testified that he does limited driving, and that his back begins to hurt after about 30 minutes of driving]). Moreover, the ALJ failed to specify how Plaintiff's testimony "about limited activities" contradicted Plaintiff's testimony in the Function Report and "the notations in the file of stability and minimal worsening of his impairments following the various surgical interventions."

Fourth, the ALJ's determination that Plaintiff's credibility was diminished because of his treatment history was essentially a finding that Plaintiff's testimony about symptoms and functional limitations were not supported by the objective medical evidence of record. However, once a claimant demonstrates medical evidence of an underlying impairment, "an ALJ 'may not disregard [a claimant's testimony] solely because it is not substantiated affirmatively by objective medical evidence.'" Trevizo v. Berryhill, 862 F.3d 987, 1001 (9th Cir. 2017)(quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)).

The Court finds that the ALJ's stated reasons for discounting Plaintiff's credibility were not sufficiently specific, or clear and convincing to allow the Court to conclude that the ALJ discounted Plaintiff's credibility on legally permissible grounds, and therefore, the Court is therefore unable to defer to the ALJ's credibility determination. Cf. Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1464 (court will defer to the ALJ's credibility determinations when they are appropriately supported in the record by specific findings justifying that decision) (citations omitted).

4. Remand Is Warranted

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman v. Apfel, supra, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess Plaintiff's credibility, remand is appropriate. Because outstanding issues must be resolved

before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: January 5, 2018

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE